UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-14052-CIV-CANNON/MAYNARD

DEZHA ROLLE,

       Plaintiff,

v.

FLORIDA CARE ALF OF VERO
BEACH, INC. d/b/a SPRING HILLS
ASSISTED LIVING FACILITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before me upon Defendant's Motion to Dismiss. DE 20. The Motion to Dismiss is fully briefed. DE 20, DE 23, DE 26. Presiding U.S. District Judge Aileen M. Cannon referred the Motion to me for a Report and Recommendation. DE 25. For the following reasons, I recommend that the motion be **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Consistent with the standard of review for a motion to dismiss, I recite the facts of this case based on the Amended Complaint's well-pleaded factual allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

Defendant Florida Care ALF of Vero Beach, Inc., doing business as Spring Hills Assisted Living Facility ("Defendant" or "Spring Hills"), is an assisted living facility in Vero Beach, Florida offering memory care, respite, and day care services. DE 1 at ¶ 12. Plaintiff Dezha Rolle began working for Spring Hills on November 23, 2023, as a certified nursing assistant ("CNA") and reported to Administrator Tillette Verges. *Id.* at ¶¶ 13–14.

1

Upon being hired, Plaintiff disclosed to Administrator Collette Burgess that she was pregnant. *Id.* at ¶ 15. Throughout her pregnancy, Plaintiff maintained regular communication with Ms. Burgess regarding her medical appointments and anticipated maternity leave. *Id.* at ¶ 16. On or about March 8, 2024, Plaintiff formally requested a leave of absence for the birth of her child, which Ms. Burgess approved. *Id.* at ¶¶ 17–18. Plaintiff alleges that, before taking leave, she had no performance deficiencies, disciplinary history, or attendance issues unrelated to her pregnancy. *Id.* at ¶ 19.

While preparing to return to work, Plaintiff contacted Ms. Burgess on or about May 2, 2024, regarding enrollment in a Med Tech class after her return. *Id.* at ¶ 20. Ms. Burgess responded that the class was only for current employees, and Administrative Assistant Carolina Lopez had informed her Plaintiff would not be returning to Spring Hills. *Id.* at ¶ 21. Plaintiff immediately advised that this was a misunderstanding and explained that she intended to return to work on June 1, 2024. *Id.* at ¶ 22. Plaintiff then contacted Ms. Lopez seeking clarification regarding her reinstatement and, after receiving no response, followed up. *Id.* at ¶¶ 23–24.

On May 28, 2024, Ms. Lopez informed Plaintiff that she would need a physician's release before returning to work. *Id.* at ¶ 25. Plaintiff promptly supplied the requested documentation confirming she was medically cleared to return and asked to be placed back on the work schedule. *Id.* at ¶ 26. The following day, Ms. Lopez advised Plaintiff that Ms. Burgess had hired replacements for Plaintiff, and no shifts were available. *Id.* at ¶ 27. After Plaintiff expressed that she had complied with everything Defendant requested and wished to resume her employment, she was instructed to contact Ms. Burgess directly. *Id.* at ¶ 28. Plaintiff then provided Ms. Burgess with her availability and anticipated return schedule, but Ms. Burgess did not respond. *Id.* at ¶¶ 29–30.

On June 1, 2024, Ms. Lopez informed Plaintiff that she could transfer to another Spring Hills location, but the position would not begin for approximately two months. *Id.* at ¶ 31. Plaintiff could not financially sustain herself without income during that period and therefore was compelled to seek other employment. *Id.* at ¶ 32. Defendant ultimately terminated Plaintiff's employment after denying her reinstatement following maternity leave. *Id.* at ¶ 33.

Based on these allegations, Plaintiff asserts four claims: (1) pregnancy discrimination in violation of Title VII, as amended by the Pregnancy Discrimination Act of 1978; (2) retaliation in violation of Title VII; (3) discrimination in violation of the Pregnant Workers Fairness Act ("PWFA"); and (4) retaliation in violation of the PWFA. *Id*. at ¶¶ 36–75.

Defendant moves to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim. DE 20. The matter is now ripe for review.

## LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Federal courts are courts of limited jurisdiction and must dismiss an action whenever it appears that jurisdiction is lacking. *See* Fed. R. Civ. P. 12(b)(1); *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 1990).

A Rule 12(b)(1) challenge may be either facial or factual. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial attacks "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1529 (quotation omitted). Factual attacks, by contrast, "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (quotation omitted). The plaintiff bears the burden to establish

3

federal subject-matter jurisdiction. *Goldfeder v. United States*, 764 F. Supp. 3d 1226, 1229 (S.D. Fla. 2025) (citing *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005)).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted. In evaluating a Rule 12(b)(6) motion, the court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555–56. To survive dismissal, a complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Id*. at 570. A claim is plausible when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A plaintiff need not detail all the facts on which her claim is based; rather, Rule 8(a)(2) requires only a short, plain statement giving the defendant fair notice of the claim and its grounds. *Twombly*, 550 U.S. at 555–56; *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). The allegations must, however, be enough to raise a right to relief above the speculative level. *Id*. The Federal Rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 662. "Mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (citation omitted). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

## DISCUSSION

Defendant seeks dismissal of the Complaint in its entirety, arguing that the Court lacks subject matter jurisdiction because Plaintiff failed to allege Defendant employed the requisite

4

number of employees and, alternatively, that each count fails to state a claim upon which relief may be granted. DE 20. Upon careful review, I recommend that the Motion to Dismiss be granted in part and denied in part. Specifically, I recommend that Plaintiff has sufficiently established subject matter jurisdiction, so Defendant's 12(b)(1) motion should be denied. I also recommend that Plaintiff sufficiently states a claim for sex discrimination under Title VII, so the Motion to Dismiss should be denied as to Count I. I recommend that Plaintiff fails to state claims for discrimination in violation of the PWFA or retaliation in violation of Title VII or the PWFA. Thus, Counts II, III, and IV should be dismissed without prejudice. Finally, I recommend that Defendant's assertions of shotgun pleading be rejected. I address these arguments below.

## I.      Subject Matter Jurisdiction

Defendant initially moves to dismiss for lack of subject matter jurisdiction, arguing that the Complaint fails to allege that Spring Hills employed "fifteen or more employees" as required to qualify as an "employer" under Title VII. *See* 42 U.S.C. § 2000e(b). In response, Plaintiff relies on *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), in which the Supreme Court held that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Id.* at 516. Because the PWFA incorporates Title VII's enforcement framework, the same reasoning applies to Plaintiff's PWFA claims. 42 U.S.C. § 2000gg-2(a)(1).

In its Reply, Defendant appears to retreat from its jurisdictional argument, acknowledging that numerosity alone is not a basis for dismissal under Rule 12(b)(1) and that the issue is more appropriately resolved on summary judgment. DE 26 at 1 n.1. Defendant's position is nevertheless somewhat equivocal because, in the same footnote, it states that it asserted the Rule 12(b)(1) argument merely "to preserve the objection." *Id.*

Regardless of Defendant's characterization, *Arbaugh* forecloses dismissal for lack of subject matter jurisdiction based on Plaintiff's failure to plead Title VII's numerosity requirement. Whether Spring Hills qualifies as an "employer" within the meaning of Title VII is not a jurisdictional prerequisite; rather, it is an element of Plaintiff's statutory claim. Accordingly, Plaintiff's failure to allege that Spring Hills employed fifteen or more employees does not deprive this Court of subject matter jurisdiction, and dismissal under Rule 12(b)(1) is unwarranted.

That conclusion, however, does not mean the Complaint adequately pleads this element for purposes of Rule 8 or survives scrutiny under Rule 12(b)(6). Although Title VII coverage is not jurisdictional, it remains an essential element of Plaintiff's claims under both Title VII and the PWFA. While Plaintiff need not specifically allege that Spring Hills employed fifteen or more employees, the Complaint should contain some facts plausibly bringing Spring Hills within Title VII's coverage. Notably, Plaintiff has not alleged even generally that Spring Hills is an "employer" within the meaning of Title VII. Courts have held that such a general allegation is sufficient at the pleading stage because it incorporates Title VII's statutory definition of "employer." *See, e.g.*, *Barnes v. O'Neil Transportation Services of Georgia, Inc.*, 2014 WL 1813715 (M.D. Ga. May 7, 2014); *Grimsley v. City of Clay*, 2013 U.S. Dist. LEXIS 58070, at *2 (N.D. Ala. Feb. 6, 2013). Here, by contrast, the Complaint contains no allegation that Spring Hills is an employer within the meaning of Title VII, nor does it otherwise allege facts plausibly bringing Spring Hills within the statute's coverage.

Accordingly, I recommend that Defendant's Rule 12(b)(1) motion should be denied because *Arbaugh* forecloses Defendant's jurisdictional argument. Nevertheless, since I recommend below that Plaintiff be afforded leave to amend for other reasons, any amended complaint should include allegations plausibly establishing that Defendant is a covered employer

6

under Title VII and, by extension, the PWFA.  Defendant, of course, remains free to challenge whether it in fact qualifies as a covered employer through the ordinary merits process, including summary judgment if appropriate.

## II.      Failure to State a Claim

### A.  Count I: Sex Discrimination in Violation of Title VII

Defendant argues that Count I fails to state a claim because (1) Plaintiff was not pregnant when she was fired and therefore cannot state a claim under the Pregnancy Discrimination Act, and (2) the Complaint otherwise fails to allege facts plausibly supporting pregnancy-based discrimination.

Title VII prohibits employers from discriminating against an employee with respect to the terms and conditions of employment because of that employee's sex.  *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008) (quoting 42 U.S.C. § 2000e-2(a)(1)). The Pregnancy Discrimination Act amended Title VII to make clear that discrimination because of sex includes discrimination on the basis of pregnancy, childbirth, and related medical conditions. *Young v. United Parcel Serv.*, Inc., 575 U.S. 206, 212 (2015).

A plaintiff may establish pregnancy-based discrimination through either direct or circumstantial evidence.  *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023); *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999).  Because this case involves circumstantial evidence, the familiar *McDonnell Douglas* framework is instructive, although not controlling at the pleading stage.  Under that framework, a plaintiff ordinarily establishes a prima facie case by showing that she was a member of a protected class, suffered an adverse employment action, was qualified for the position, and was treated less favorably than similarly situated employees outside the protected class.  *McCann*, 526 F.3d at 1373 (*quoting EEOC v. Joe's Stone*

*Crab, Inc.,* 220 F.3d 1263, 1286 (11th Cir. 2000)).  A comparator is not invariably required, however, because a plaintiff may also establish a prima facie case through sufficient non-comparator circumstantial evidence giving rise to a reasonable inference of discrimination. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012).

More importantly, a plaintiff need not plead the elements of a prima facie case to survive a motion to dismiss, and the absence of comparator allegations is not necessarily fatal.  *Tynes*, 88 F.4th at 946.  Rather, the ordinary pleading standards apply, and the question is whether the factual allegations, accepted as true, permit a reasonable inference of discrimination.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015).

Defendant's first argument—that Plaintiff cannot state a pregnancy discrimination claim because she had already given birth when the adverse employment action occurred—is unpersuasive.  The Pregnancy Discrimination Act protects against discrimination on the basis of pregnancy and childbirth, and courts have recognized that a plaintiff may plausibly state a pregnancy discrimination claim where the alleged adverse employment action occurs during or immediately following maternity leave.  *See, e.g.*, *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 363 (3d Cir. 2008) (noting "a typical pregnancy discrimination claim" includes allegations of being "fired while on maternity leave"); *see also Valentine v. Legendary Marine FWB, Inc.*, 2010 WL 1687738, at *4 (N.D. Fla. April 26, 2010) (rejecting employer's argument that plaintiff could not claim to have been fired for being pregnant because she was fired after she gave birth); *Taylor v. C&B Piping, Inc.*, 2017 WL 1047573, at *4 (N.D. Ala. March 20, 2017) (denying motion to dismiss Title VII claim where plaintiff alleged that she was fired on the day she returned from maternity leave); *Wright v. Sandestin Investments, LLC*, 914 F. Supp.2d 1273, 1283 (N.D. Fla.

8

Dec. 12, 2012) (plaintiff set forth a prima facie case where evidence showed she was pregnant and her employer knew this, she was qualified for her job, she was terminated while on maternity leave, and other executive assistants who were not pregnant were not terminated).

The cases Defendant cites in support of the opposite conclusion are materially distinguishable. Moreover, two of the three cases were decided on summary judgment rather than on a motion to dismiss and therefore addressed whether the evidentiary record supported an inference of discrimination, rather than whether the complaint plausibly alleged one.

For example, in *Nemorin v. Urban League of Broward County, Inc.*, the court dismissed a Title VII claim because the plaintiff was not pregnant when the alleged adverse employment action took place. 2025 WL 1744446, at *4 (S.D. Fla. June 23, 2025) (Leibowitz, J.). Unlike in this case, however, where Plaintiff alleges that Defendant terminated her employment during/immediately after her maternity leave, the plaintiff in *Nemorin* sought additional leave months after childbirth and was terminated approximately four months after giving birth. *Id.* Similarly, in *Sloan v. Redi Services, LLC*, a summary judgment case, the plaintiff gave birth almost a year before the alleged adverse employment actions, and there was no evidence that anyone—including the plaintiff— had mentioned the pregnancy after the employee returned to work or that she continued to experience any pregnancy-related conditions at the relevant times. 2025 WL 2271486, at *8–10 (D. Wy. July 3, 2025). As the *Sloan* court explained, "The law does not immediately exclude individuals once they have given birth, nor does it include all mothers, a[f]ter they have given birth, for the rest of their lives." *Id.* at *8 (citation omitted). Rather, "[t]he key factor is that the plaintiff must connect the dots between her pregnancy and the adverse employment action." *Id.* at *9. Here, Plaintiff has plausibly alleged that connection by asserting that Defendant terminated her employment immediately upon the conclusion of her maternity leave.

9

Further, the third case cited by Defendant—*Barnowe v. Kaiser Foundation Health Plan of the Northwest*—is readily distinguishable. There, the plaintiff did not allege discrimination based on an actual pregnancy. Instead, she claimed she fell within the statute's protection because she had informed a supervisor that she was "planning on" trying to become pregnant again. 2005 WL 1113855, at *4 (D. Or. May 4, 2005). The court rejected extending Title VII protections to women who are merely "planning to try" to become pregnant at some point in the future. *Id.* That case, which also was decided on summary judgment, bears little resemblance to the allegations present here.

Accordingly, Defendant's authorities do not establish that a pregnancy discrimination claim fails simply because the challenged employment action occurred after childbirth. Rather, the critical inquiry is whether the plaintiff has plausibly alleged a sufficient connection between the pregnancy, childbirth, or related medical conditions and the adverse employment action to raise an inference of discrimination. Here, the Complaint plausibly alleges that Defendant terminated Plaintiff's employment because she took maternity leave related to pregnancy and childbirth.

Defendant's second argument—that the Complaint is merely a formulaic recitation of the elements—is likewise unpersuasive. The Complaint alleges a coherent factual narrative: Defendant knew Plaintiff was pregnant, approved her maternity leave, acknowledged her anticipated return date, required a physician's release before permitting her return, received that release, then informed Plaintiff that replacements had been hired and no work was available when she attempted to return. DE 1 at ¶¶15–31. Further, although she satisfactorily performed her work duties and had no performance deficiencies warranting termination, Defendant ultimately refused to reinstate her following her maternity leave. *Id.* at ¶¶ 19, 33. These are factual allegations, not merely legal conclusions. Accepting these well-pleaded allegations as true and drawing all

10

reasonable inferences in Plaintiff's favor, the Complaint plausibly raises an inference of discrimination.  Accordingly, the Motion should be denied as to Count I.

### B.  Count II: Retaliation in Violation of Title VII

Defendant argues that Plaintiff's Title VII retaliation claim fails because the Complaint does not plausibly allege Plaintiff engaged in protected activity.  I agree.

Title VII prohibits an employer from retaliating against an employee because she has opposed an unlawful employment practice.  42 U.S.C. § 2000e-3(a).  To state a claim for retaliation, a plaintiff must allege that she suffered an adverse employment action as a result of engaging in protected activity.  *Crawford v. Carrol*, 529 F.3d 961, 970 (11th Cir. 2008).  To engage in a protected activity for purposes of a Title VII retaliation claim, an employee must, at minimum, communicate to an employer a reasonable belief that discrimination is occurring.  *Webb v. R&B Holding Co., Inc.*, 992 F. Supp. 1382, 1389 (S.D. Fla. 1998).  Simply complaining about a policy and leaving it to the employer to "infer that discrimination has occurred" is not sufficient to establish a protected activity.  *Id.*

Plaintiff contends that her requests for, and use of, maternity leave constitute protected activity.  They do not.  These actions do not meet the minimum standard of "communicat[ing] her belief that discrimination is occurring to the employer.'"  *Demers v. Adams Homes of Nw. Fla., Inc.*, 321 F. App'x 847, 852 (11th Cir. 2009) (*quoting Webb*, 992 F. Supp. at 1390).  As the Eleventh Circuit explained in *Demers*, "[a] simple request for maternity leave would not suffice, because it alone would not announce opposition to the discriminatory basis for its denial."  *Id.*

The Complaint contains no allegations that Plaintiff complained of pregnancy discrimination or otherwise communicated to Defendant that she believed it was engaging in illegal conduct by firing her.  Instead, Plaintiff alleges only that she requested maternity leave,

took the approved leave, later sought reinstatement, and was denied reinstatement.   Those allegations, without more, do not plausibly allege that Plaintiff engaged in protected activity for purposes of a Title VII retaliation claim.  *See Benitez v. True Choice Telecom, LLC*, 2020 WL 10058215, at *2 (M.D. Fla. March 26, 2020) (dismissing retaliation claim where plaintiff requested an accommodation to her work schedule but never complained of discrimination to her employer); *Norris v. Honeywell International, Inc.*, 2023 WL 6256183, at *19 (M.D. Fla. Sept. 26, 2023) (explaining that "to satisfy the first prong of Title VII retaliation, [p]laintiffs must allege that they opposed an unlawful practice by complaining, or at least implying, that it constituted discrimination on a ground protected by Title VII").   Because the Complaint does not plausibly allege that Plaintiff engaged in protected activity under Title VII, Count II fails to state a claim and should be dismissed without prejudice.

### C. Count III: Pregnancy Discrimination in Violation of the Pregnant Workers Fairness Act

Next, Defendant seeks dismissal of Plaintiff's claim under the PWFA.  42 U.S.C. § 2000gg-1.  Enacted in December 2022 and modeled largely on the Americans with Disabilities Act (ADA), the PWFA requires covered employers to "make reasonable accommodations to the known limitations related to pregnancy, childbirth, or related medical conditions of a qualified employee," absent a showing of undue hardship.  42 U.S.C. § 2000gg-1(1); *see also Keiper v. CNN Am., Inc.*, 2024 WL 5119353, at *2 (E.D. Wisc. Dec. 16, 2024).  A "known limitation" includes a "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions."  42 U.S.C. § 2000gg(4).

"Under the PWFA, the plaintiff must state: (1) she had a medical condition related to the pregnancy; (2) she was placed on work restrictions by a medical professional; (3) she is requesting reasonable accommodations; and (4) the defendant failed to accommodate those restrictions."

12

*Carnegie v. Heritage Park Nursing Ctr. LLC*, 2025 WL 2697857, at \*3 (M.D. Fla. Sept. 4, 2025), *report and recommendation adopted*, 2025 WL 2695234 (M.D. Fla. Sept. 22, 2025); *see also Keiper*, 2024 WL 5119353, at \*2 ("To establish a prima facie case for failure to accommodate under the PWFA, [the plaintiff] must allege facts sufficient to show: (1) she is a qualified individual; (2) the employer was aware of her limitation; and (3) the employer failed to reasonably accommodate the limitation.").

Defendant argues that Count III should be dismissed because it merely parrots the PWFA's statutory language without alleging facts sufficient to state a plausible claim.  I agree.  Count III alleges that Plaintiff had "known limitations related to pregnancy, childbirth or related medical conditions" and could perform the essential functions of her position "with reasonable accommodation," DE 1 at ¶¶ 56–60, but never identifies what those "known limitations" were or what "reasonable accommodations" Plaintiff required.  Likewise, although Count III incorporates preceding factual allegations, none identifies a pregnancy-related limitation requiring accommodation, a request for a reasonable accommodation, a denial of such request, or facts showing a failure to engage in the interactive process.  As pleaded, Count III consists of little more than conclusory recitations of the statutory elements.  Accordingly, Count III should be dismissed without prejudice.

### D.  Count IV: Retaliation in Violation of the Pregnant Workers Fairness Act

Plaintiff asserts a claim for retaliation under the PWFA.  DE 1 at ¶¶ 68–75.  The PWFA's anti-retaliation provision prohibits an employer from discriminating "against any employee because such employee has opposed any act or practice made unlawful by this chapter or because such employee made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.  42 U.S.C. § 2000gg-2(f)(1).  To state a plausible

13

retaliation claim, a plaintiff must allege facts showing "(1) she participated in conduct that the statute protects; (2) she suffered an adverse employment action; and (3) the protected conduct and the adverse employment action are causally related." *Patel v. Baycare Health System, Inc.*, 2026 WL 1481504, at *14 (M.D. Fla. May 27, 2026) (internal quotation omitted).

Count IV fails to state a claim. The Complaint contains no factual allegations that Plaintiff engaged in activity protected by the PWFA, such as requesting a reasonable accommodation or opposing conduct made unlawful by the statute. Nor does it allege facts showing that Defendant took any adverse employment action because Plaintiff engaged in protected activity. Absent factual allegations supporting either protected activity or a causal connection, Plaintiff has failed to state a plausible retaliation claim under the PWFA. Accordingly, Count IV should be dismissed without prejudice.

## III.   Shotgun Pleading

Lastly, Defendant argues the Complaint is an impermissible shotgun pleading. DE 20 at 13–14; *id.* at 16. I disagree.

"Shotgun pleadings" are complaints "that violate either Rule 8(a)(2) or Rule 10(b), or both," by "fail[ing] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320–23 (11th Cir. 2015). The *Weiland* framework is meant to be an illuminating and clarifying guide rather than a rigid test. *Id.* at 1321 ("Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings."). Indeed, Rule 10(b) sets forth a flexible standard that turns on whether pleading multiple claims in one count advances or hinders the interests of clarity." *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1323 (S.D. Fla. 2020) ("Notice is the touchstone of the

14

Eleventh Circuit's shotgun pleading framework."). This means that even if a pleading could have been drafted in a clearer way and is "not a model of efficiency or specificity," it should not be dismissed as a shotgun pleading if it adequately puts a defendant "on notice of the specific claims against them and the factual allegations that support those claims." *Weiland*, 792 F.3d at 1325; *see also Graux v. Universal Music Grp., Inc.*, 2025 WL 1634736, at *3 (S.D. Fla. June 9, 2025) ("The key inquiry is whether the [pleading deficiency] materially increases the burden of understanding the factual allegations underlying each count.") (citation omitted).

Although I have identified some pleading deficiencies, the Complaint is hardly an example of a shotgun pleading. Rather, it is straightforward and intelligible. It pleads discrete causes of action connected to organized factual allegations, all plainly attributable to a single defendant. Nothing about the Complaint obscures the nature of the claims or leaves Defendant completely guessing as to the conduct at issue. It provides Defendant with adequate notice of the claims brought against it. Therefore, dismissal on shotgun-pleading grounds is unwarranted.

### **RECOMMENDATION**

Based on the foregoing, I respectfully **RECOMMEND** that Defendant's Motion to Dismiss, DE 20, be **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendant's 12(b)(1) motion should be **DENIED**.

2. Defendant's 12(b)(6) motion should be **DENIED** as to Count I.

3. Defendant's 12(b)(6) motion should be **GRANTED** as to Counts II, III, and IV. Counts II, III, and IV should be **DISMISSED WITHOUT PREJUDICE**, and Plaintiff should be granted leave to file an amended complaint.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with presiding U.S. District Judge Aileen M. Cannon.  *See* 28 U.S.C. § 636(b)(1)(C); S.D. Fla. Mag. J. R. 4(a).  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).  **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 14th day of July, 2026.

SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE

16